OPINION
Plaintiff, Douglas L. Talbot, appeals from a judgment and decree of divorce terminating his marriage to Defendant, Julie A. Talbot.
Douglas* and Julie were married in July, 1993. They had previously lived together for approximately eight years in a house Douglas owned. Douglas sold the house when they were married, and the parties applied the sale proceeds and other monies available to them to purchase a marital residence. The parties paid $134,900, cash, for their new residence, which was titled jointly in their names.
No children were born as issue of the marriage. The parties each have grown children from prior unions. Douglas has two adult sons who are his partners in an auto repair business. Julie has an adult son who is profoundly disabled from injuries he suffered in an accident and resides in a nursing home where Julie is employed.
The parties resolved all issues by agreement, except two. They asked the court to divide their interests in the marital residence. Julie also asked for spousal support.
The trial court, after awarding the marital residence to Douglas as the parties had agreed, ordered Douglas to pay Julie $51,060 for her equity in the residence. The court also ordered Douglas to pay Julie $300 per month for three years as spousal support. Further, and on its own motion, the court ordered Douglas to pay one-half of Julie's attorney fees in the divorce action.
Douglas filed a timely notice of appeal. He presents three assignments of error.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DIVIDING THE EQUITY IN THE MARITAL RESIDENCE.
A domestic relations court that grants a decree of divorce is required to classify all property that the parties or either of them own as marital property or separate property and then to divide the marital property between the parties equitably. R.C. 3105.171(B). An equal division is presumed to be equitable. R.C. 3105.171(C)(1). Separate property must be distributed to the spouse whose property it is. R.C.3105.171(D).
Per R.C. 3105.171(A)(3)(a), "marital property" is defined to include all property or any interest therein that the parties or either of them currently owns. Because that is the entire sum of the property which the court may divide or distribute, a presumption arises that any property which either currently owns is marital property. A party who would have the court award some item of property as separate property has the burden to show that it satisfies one of the definitional provisions of R.C.3105.171(A)(6)(a).
Commingling the separate property of one spouse with the separate property of another or the marital property of both does not destroy its identity as separate property, unless it is no longer traceable as separate property. R.C. 3105.171(A)(6)(b).
 Thus, traceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property. The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. (Citations omitted.)
Peck v. Peck (1994), 96 Ohio App.3d 731, 734. As a corollary of that proposition, if a spouse who claims any alleged separate property or an interest therein which has been commingled with the marital property or the separate property of another spouse is unable to trace its identity as his or her separate property, the property or interest must be classified as marital property and divided equally.
These principles are at issue in the assignment of error presented. Douglas and Julie asked the court to award them as their separate property the cash contributions each made toward purchase of the marital residence. The parties paid $134,900 cash. It is undisputed that Julie contributed $20,800 from her premarital funds, and the court awarded that amount to her as a credit toward her equity. It is also undisputed that Douglas contributed the balance of the purchase price. However, the court did not award Douglas all of his contribution as a credit toward his equity by classifying it as his separate property. The part which it didn't award Douglas the court treated as marital property, and divided equally. As a result, according to Douglas, the value of Julie's equity in the marital residence, which the court ordered Douglas to pay Julie, is falsely inflated.
Douglas testified that his cash contributions included the proceeds from the sale of the home he owned before he and Julie were married, cash gifts from his father, and a $30,000 loan he received from his father. The court awarded Douglas equity credits for the first two amounts but not the third, the $30,000 loan from his father. The court classified the corresponding equity in the residence represented by the loan proceeds as marital property. Douglas complains that the classification is against the manifest weight of the evidence. He points out that in her testimony Julie corroborated his claim that his father had loaned him $30,000 that he applied toward the purchase price of the marital residence. Therefore, according to Douglas, he is entitled to it.
While it is undisputed that Douglas' father loaned him $30,000 and that Douglas applied the loan proceeds to the purchase price, it is also undisputed that the amount was commingled with Julie's separate property to purchase the marital residence, which was itself marital property. Therefore, and in order to have a corresponding share of equity in the marital residence credited to him as his separate property, Douglas has the burden to trace it to the $30,000 loan from his father. Peck v. Peck, supra.
These facts nicely illustrate the effect that "traceability" has had on the marital property/separate property distinction. Formerly, commingling operated to transmute separate property into marital property. Now, property which previously met one of the statutory definitions of separate property is not transmuted into marital property merely because it is commingled. In addition, some particular fact or circumstance must be shown to have deprived it of its identity as separate property, rendering it marital property by operation of the presumption in favor of a marital property classification for any property currently owned.
Here, in opposition to Douglas' claims and the evidence he offered, Julie offered evidence probative of a contrary finding. Julie testified that the $30,000 loan, which was not documented, was made by his father to both parties, not to Douglas alone. (T. 73). Julie also testified that the loan was repaid or forgiven by Douglas' father during their marriage (T. 53), and that part of the consideration given in return was Julie's own labor in caring for Douglas' parents and their home. (T. 55). Douglas conceded on cross-examination that the loan was not reported as an asset on the inventory of his father's probate estate (T. 35-36). That evidence is probative of Julie's claim that the loan was repaid or forgiven by Douglas' father during their marriage. The latter is consistent with evidence that Douglas' father, who is now deceased, was very generous to his family during his life.
If the loan from Douglas' father was repaid during the marriage, an inference arises that it was repaid with marital property. If it was forgiven in exchange for Julie's labor, she contributed to obtain that benefit. Either is a fact or circumstance that, if it happened, could deprive the part of the purchase payment that Douglas made with the loan proceeds of its identity as his separate property. The presumption that it is now marital property would prevail as a consequence.
The particular argument that Douglas makes is that the court's judgment requiring him to pay Julie $51,060 for her equity in the marital residence is against the manifest weight of the evidence, to the extent that it includes his own separate property which the court improperly classified as marital. Judgments which are supported by some competent, credible evidence will not be reversed on appeal as against the manifest weight of the evidence. C.E. Morris Inc. v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
The trial court, in the exercise of its discretion, found that Douglas' separate property claim "is not supported by a preponderance of the evidence presented and has not been sufficiently traced as (his) separate property." (Decision and Order, p. 3). There was competent, credible evidence, in the form of Julie's testimony and other evidence corroborating it, to support the court's finding and its resulting judgment. Therefore, we may not reverse.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING PLAINTIFF/APPELLANT TO PAY SPOUSAL SUPPORT IN THE AMOUNT OF $300.00/MONTH FOR 3 YEARS.
When it ordered spousal support, the trial court stated, inter alia:
 "Under Ohio law an award of spousal support is based upon the factors listed in R.C. 3105.18(C). The statute directs the court to consider whether the support is reasonable and appropriate. From the facts presented at trial, it is determined that there is a need for reasonable spousal support that the Plaintiff has the ability to pay it. The Court has looked at the incomes of the parties from all sources: it has considered that the parties are approximately the same age; both parties are in good health; the Plaintiff has a retirement plan, the Defendant does not; this was a seven year marriage and the Defendant may need some time to pursue additional education or vocational training; and finally, the lost income production capacity the Defendant incurred due to her marital responsibilities. After considering these factors the Defendant is AWARDED sustenance spousal support in the amount of Three Hundred Dollars ($300.00) per month, plus a 2% processing charge, for a period of three (3) years. The effective date for the spousal support is October 23, 2000. The spousal support award will terminate upon the death of either party, the Defendant's remarriage or co-habitation with an unrelated adult male, in a marital type situation where financial support exist and as determined by relevant statutory and case law. The court specifically retains jurisdiction over the amount of spousal support awarded but not the duration. Under federal tax laws, the spousal support is fully taxable to the Defendant and an exemption to the Plaintiff."
(Decision and Order, p. 4).
Douglas argues that the trial court failed to consider the factors set out in R.C. 3105.18(C)(1)(a) — (j) when it ordered spousal support. The court's statement refutes that claim.
Douglas also argues that the trial court abused its discretion when it failed to impute a greater income to Julie. In that connection the court found:
 "The Defendant is currently employed at the nursing home where her disabled son resides. She earns $7.00 per hour and works thirty hours a week. She has taken this position in order to be near her son, who is totally bed ridden, unable to swallow on his own, unable to speak, and unable to walk or talk. The Defendant routinely assists in her son's care. It is determined that due to her family obligations and responsibilities, the Defendant is fully employed and additional income will not be imputed to her."
(Decision and Order, pp. 3-4).
Douglas argues that because Julie testified that she could work more hours each week, the trial court should have multiplied her hourly rate by forty hours, yielding an annual income for Julie in the amount of $14,560. He contrasts this with evidence that his own annual income is but $17,580, and argues that the difference is not substantial enough to warrant the $3600 in annual spousal support he is ordered to pay Julie each year over three years.
When it awards spousal support the court is required to consider "[t]he relative earning abilities of the parties." R.C. 3105.18(C)(1)(b). The court did that and concluded that Julie's obligations to her disabled son prevented her from earning more. She testified that she would work forty hours each week at the nursing home, but had been offered no more than thirty. (Tr. 86). The court did not abuse its discretion when it failed to impute to her more than the annual income of approximately $11,000 ($7.00 x 30 hrs/wk) that Julie earns.
With respect to his own income, Douglas offered evidence in the form of his own 1999 Federal income tax return reporting an income of $17,580, which Douglas earns from an auto repair business he operates with his two adult sons. However, his tax return also shows that the business paid Douglas $10,000 in rent for the business premises, which he owns. (Tr. 21). After substantial depreciation and other charges, Douglas reported rental income of only $2,638. (Tr. 21).
Julie testified that Douglas had other income from the business that he did not report. (Tr. 85). Consistent with that claim is Douglas' admission that Julie earned $600 to $800 a month cleaning houses in 1999 that was not reported on their joint return. (Tr. 26). Julie corroborated that the parties similarly failed to report the income she earned for a period of fifteen years. (Tr. 78). In view of this additional evidence, the trial court could reject Douglas' evidence of his income, or at least was not bound by it.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING PLAINTIFF/APPELLANT TO PAY A PORTION OF DEFENDANT/APPELLEE'S ATTORNEY FEE
S.R.C. 3105.18(H) states:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
R.C. 3105.18(H) presents questions of fact concerning the reasonableness of fees charged and the need of one party for the legal services involved and the ability of the other party to pay for some or all of them. The findings involved ordinarily require an evidentiary hearing. However, "where the amount of the attorney's time and work is evident to the trier of fact, an award of attorney's fees, even in the absence of specific evidence to support the amount, is not an abuse of discretion." Woloch v. Foster (1994), 98 Ohio App.3d 806, 813. Further, where the amount ordered is nominal evidence of the reasonableness of the fee may not be necessary. Id.
In its Decision and Order the trial court required Julie to submit a schedule of her attorneys fees within ten days, stating that "[a]n additional hearing may be set to determine the Defendant's ability to pay her attorney fees and whether or not she would be prevented from fully litigating her case without a reasonable award of fees." (Decision and Order, p. 7).
Julie submitted a schedule of her fees on December 5, 2000. It showed the total amount of her obligation to her attorney, as yet unpaid, was $2,457.00. On January 24, 2001, the court, without a hearing, found that the fees were reasonable and that Julie would be prevented from protecting her rights without an award. The court then ordered Douglas to pay one-half the amount Julie owed, $1,228.50.
Douglas does not complain that the court ordered him to pay a share of the fees that Julie incurred prior to any notice to him that the requirement could be imposed. See Seagraves v. Seagraves (1997),125 Ohio App.3d 98. Rather, Douglas complains that because Julie did not request an award of attorney fees, he was denied the notice that due process requires. Julie contends that Douglas was put on notice by her general prayer for "any other relief" to which she might be entitled. Douglas argues that is too general, and we agree. However, the court's Decision and Order itself put Douglas on notice that he might be required to pay some or all of Julie's attorneys fees. The order was made pursuant to R.C. 3105.18(H), and required no prior request by Julie.
Due process of law has a component in addition to notice, which is that a party whose property is taken must have had a fair opportunity to be heard concerning the taking. New York Cent. R. Co. v. Public Utilities Commission of Ohio (1952), 157 Ohio St. 257. The court suggested in its Decision and Order, supra, that "a hearing may be set to determine" the issues which R.C. 3105.18(H) involves with respect to a proposed award of fees. The court entered its award without a hearing, however. Therefore, its order requiring Douglas to pay a share of Julie's attorney's fees violates Douglas' due process right to an opportunity to be heard, and must be reversed.
Had Julie expressly requested attorneys fees, an award of fees made in the court's Decision and Order, based on the evidence the court had heard, would not present the same due process violation. However, the award was made subsequent to the Decision and Order on the basis of evidence the court previously heard, but without an opportunity for Douglas to be heard on the issues involved. Douglas had a right to contest the weight or sufficiency of the evidence on which the court might rely in deciding those issues. Had the court told him that it would proceed to judgment on an award unless he requested a hearing within a reasonable time, we might find that Douglas waived his due process violation claim had he then failed to request a hearing. That didn't happen, however. Further, the amount of the award, $1,228.50, is more than a nominal sum.
The third assignment of error is sustained.
 Conclusion
Having sustained the third assignment of error, we will reverse the judgment from which this appeal was taken in that part which ordered Plaintiff-Appellant, Douglas L. Talbot, to pay a share of the attorney fees incurred by Defendant-Appellee, Julie A. Talbot, and we will remand for further proceedings on that issue. Otherwise, the judgment will be affirmed.
WOLFF, P.J. and BROGAN, J., concur.
* For clarity and convenience, the parties are identified by their first names.